IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| TRINITY LUTHERAN CHURCH ) | | |
| OF COLUMBIA, INC. ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | Case No. 2:13-CV-04022-NKL | |
| ) | | |
| SARA PARKER PAULEY, ) | | |
| in her official capacity as ) | | |
| Director of the MO Department of ) | | |
| Natural Resources ) | | |
| ) | | |
| Defendant. ) | | |

**Defendant's Reply to Plaintiff's Response
to Defendant's Motion to Dismiss and Suggestions in Support**

Defendant Pauley moves that the Court dismiss plaintiff's complaint under Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim for which relief can be granted because Missouri's constitutional prohibition against using public funds in aid of any church, sect or denomination of religion does not violate the federal Equal Protection Clause, the Free Exercise Clause, the Establishment Clause, the Free Speech Clause, or the Missouri Constitution, art. I, § 7.

I.  Defendant has not violated the Equal Protection Clause

Because Missouri does not favor one religious institution over another, there is no violation of the Equal Protection Clause. It does not offend the

Equal Protection Clause for the state to treat an entire class similarly. The guarantee to Equal Protection provides that a state must treat like cases alike but may treat unlike cases accordingly. *Vacco v. Quill*, 521 US 793, 799 (1997). In this case, Missouri's prohibition of using public money to support religious purposes is applied to all religious institutions equally. The cases Plaintiff cites do not require that Missouri erase the line drawn our state's constitution between religious and secular institutions.

      Plaintiff cites *Patel v. US Bureau of Prisons* and other prisoner cases for the proposition that religion is a suspect classification. (Plaintiff's Response, page 2.) Plaintiff's reliance on these cases is misplaced. In *Patel*, the plaintiff was a Muslim who alleged that his faith prevented him from eating certain meals served by the Bureau of Prisons, but that kosher meals were served to other prisoners. *Patel v. US Bureau of Prisons*, 515 F3d 807, 810 (8th Cir. 2008). The Eighth Circuit wrote that in order to prevail on his Equal Protection claim, Patel had to show that he was treated differently from similarly situated inmates, that the different treatment was based on a suspect classification or fundamental right, and that the Bureau of Prisons' decision was motivated by intentional or purposeful discrimination. *Patel*, 515 F3d at 815-816. None of these elements are present in the instant case. Missouri does not favor another church or faith over or discriminate against Trinity Lutheran. Missouri's prohibition against the use of public money for

religious purposes does not target a suspect class, and is an "interest of the highest order." *Luetkemeyer v. Kaufmann,* 364 FSupp 376, 386 (US Dist. Court, WD, 1973) (quoting *Wisconsin v. Yoder,* 406 US 205 (1972)).

    a. <u>Missouri's Compelling Interest</u>

Missouri's insistence on a high degree of separation of church and state—higher than that required in the First Amendment—is a compelling state interest. *Luetkemeyer v. Kaufmann*, 364 FSupp 376, 386 (US Dist Court, WD, 1973). This is a subject within Missouri's constitutional power and is an "interest of the highest order." *Id.* This interest satisfies any possible infringement of the First Amendment or any other prohibition of the United States Constitution. *Id.* This interest is scarcely novel and there are few areas in which a state's anti-establishment interests come more into play. *Locke v. Davey*, 540 US 712, 722 (2004). Defendant has not violated the United States Constitution.

Plaintiff's reliance on *Sherbert v. Verner* in response to *Luetkemeyer* is misplaced. (Plaintiff's Response, page 5). In *Sherbert*, the plaintiff was denied certain unemployment benefits because her religion forbade her from working on Saturdays. *Sherbert v. Verner*, 374 US 398 (1963). In order to get unemployment benefits, she would have had to ignore this Sabbath rule, while practitioners of other faiths did not. Unlike the *Sherbert* scenario, the Missouri Constitution, art. I, § 7 does not require plaintiff to forego a

religious practice by denying it playground grant money. In addition, the Court in *Sherbert* identified no compelling interest by the government. In our case, as addressed previously on page 3, Missouri's interest in a high degree of separation of church and state is of the highest order.

A more informative case is *Johnson v. Robinson*, 415 US 361 (1973). In that case, conscientious objectors were denied certain veterans benefits. The plaintiffs alleged violations of the Equal Protection clause and violations of their right to religious freedom. *Johnson*, 415 US at 361. The Court held that withholding educational benefits was only an incidental burden on the veterans' free exercise of religion, if any burden at all, and no violation occurred. *Id.,* at 385. And, after finding there was no violation of the free exercise of religion, the defendant needed only to demonstrate a rational basis, rather than compelling government interest. *Id.,* at 375, fn. 14. As Defendant did not infringe upon Plaintiff's free exercise of religion here, rational basis, rather than compelling interest, is the relevant test.

    b. <u>Missouri's Prohibition is Narrowly Tailored</u>

Missouri's Art. I, §7 only prohibits the use of public money for religious purposes. It does not attempt to prohibit the use of private money for religious purposes. Defendant's scrap tire program does not impose restrictions on the plaintiff's curriculum, plaintiff's hiring practices or plaintiff's admission requirements for students. The only effect Missouri's

prohibition has on this defendant is to limit defendant's access to public funds for the use of improving its playground. This is very similar to the prohibition approved in *Locke*, in which Washington State did not interfere with defendant's religious school accreditation, defendant was not thwarted in carrying out its evangelical Christian mission without interference, and Washington did not prevent the defendant's students from taking devotional courses. *Locke*, 540 US at 724. Missouri's interest in prohibiting the use of public funds for religious purposes is very narrowly tailored and is exactly the sort of prohibition approved in *Locke*.

II.  There is No Violation of the Free Exercise Clause.

Missouri's Art. I, §7 does not prohibit the free exercise of any religion. Trinity Lutheran's congregants are in no way prohibited from engaging in any religious practice.

The cases cited by Plaintiff all center on a specific governmental limitation on the practice of religion. *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 US 520 (1993) (an ordinance prohibited the ritual slaughter of animals); *Tenafly Eruv Ass'n v Borough of Tenafly*, 309 F3d 144, 151 (3rd Cir. 2002) (a borough ordinance prohibited ceremonial signage that demarcated an area for worship, but this ordinance was applied only to a Jewish temple); *Hartman v. Stone*, 68 F3d 973, 975 (6th Cir. 1995) (an Army regulation specifically prohibited daycare providers from conducting religious

activities). In *Midrash Sephardi, Hollywood Community Synagogue,* and *Chabad of Nova,* zoning ordinances or practices specifically prevented houses of worship from locating in residential or tourist areas.[1]

Missouri's Art. I, §7 does none of these things. It does not limit where Trinity Lutheran may establish its church. It does not prohibit Trinity Lutheran from engaging in any religious activity. It does not prohibit Trinity Lutheran from posting signs. There is no violation of the Free Exercise clause.

III. There is No Violation of the Establishment Clause

Missouri's Art. I, §7 does not establish a religion. None of Plaintiff's cases can be read to require an affirmative funding obligation to religious institutions.

In *Rosenburger,* a student Christian newspaper sued to obtain access to university facilities. *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 US 819 (1995). The Supreme Court held that there was no violation of the Establishment Clause, noting that the university had not proposed to "advance religion or adopted some ingenious device with the purpose of aiding a religious cause." *Id.,* at 840. Similarly, in *Board of Education of the*

---

[1] *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F 3d 1214 (11th Cir. 2004), *Hollywood Community Synagogue, Inc. v. City of Hollywood*, 430 F Supp 2d 1296 (SD Fla 2006), *Chabad of Nova, Inc. v. City of Cooper City*, 575 F Supp 2d 1280 (SD Fla 2008)

*Westside Community Schools*, a high school Christian group sued for access to facilities under the Equal Access Act. *Board of Education of the Westside Community Schools v. Mergens*, 496 US 226 (1990). The Supreme Court held that the Equal Access Act did not violate the Establishment Clause. *Id.* The Court did *not* hold that the government has an affirmative duty to fund religious organizations. In *Everson*, the Supreme Court held that the Establishment Clause did not prohibit New Jersey from funding bus fares for parochial school children. *Everson v. Board of Ed. Of Ewing Tp.*, 330 US 1, 17 (1947). However, neither did the Court say that government had an affirmative duty to fund this activity. The Court also held that the Supreme Court's authority to strike down state statutes could only be exercised with "extreme caution." *Id.,* at 7.

IV.  There is No Violation of Missouri Const. Art I,§7

The first clause of Article I, §7 provides that no money shall ever be taken from the public treasury, directly or indirectly, in aid of any church, sect or denomination of religion. There is no ambiguity in this clause.

In *St. Louis University v. Masonic Temple Association of St. Louis*, the Missouri Supreme Court examined what constitutes control by a religious creed under Article IX, §8 of the Missouri Constitution. *St. Louis University v. Masonic Temple Association of St. Louis*, 220 SW 3d 721, 726 (Mo. banc 2007). This case is useful in analyzing whether the grant money sought by

7

plaintiff is in aid of Trinity Lutheran Church. The Missouri Supreme Court noted that St. Louis University is not a religious institution simply by association with the Catholic Church. *Id.* The key was, instead, whether religion so pervades the atmosphere that the entity is in essence under religious control or directed by a religious denomination. *Id.* In *St. Louis University*, the Missouri Supreme Court determined that St. Louis University was not controlled by a religious creed. Among other factors, the Court noted that there was no allegation that SLU's Jesuit roots controlled campus life and that SLU respected academic freedom and inquiry, even if it ran contrary to Catholic teachings. *Id.,* at 728. The Court referred to SLU's by-laws, which announced SLU's primary purpose was education, not indoctrination. *Id.*

In the instant case, the Learning Center is controlled by Trinity Lutheran. The Learning Center merged with Trinity Lutheran Church in 1985. (Compl., ¶ 11.) The Learning Center is a ministry of the Church and incorporates daily religious activities. (Compl., ¶ 14.) It teaches a Christian world view to its attendees (Compl., ¶ 15). The Church uses the Learning Center to teach the Gospel to members and non-members alike. (Compl., ¶ 17). This is a starkly different mission from St. Louis University's. If the Department of Natural Resources had issued grant money to the plaintiff, it would have done so in aid of a church, a violation of Missouri's Art. I, §7.

## Conclusion

For the foregoing reasons, the Court should dismiss the complaint because the plaintiff has failed to state a violation of either the United States or Missouri constitutions.

Respectfully submitted,

**CHRIS KOSTER**
Attorney General

*/s/ James Layton*
JAMES R. LAYTON
Solicitor General
Mo. Bar. No. 45631

*/s/ Don Willoh*
DON WILLOH
Assistant Attorney General
Mo. Bar. No. 44331

*/s/ Jeremy Knee*
JEREMY KNEE
Assistant Attorney General
Mo. Bar No. 64644
P.O. Box 899
Jefferson City, MO 65102
Phone (573) 751-8795
Fax (573) 751-8796
don.willoh@ago.mo.gov
jeremy.knee@ago.mo.gov

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify on this 10th day of June, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Joel L. Oster
Erik W. Stanley
Alliance Defending Freedom
15192 Rosewood
Leawood, Kansas 66224

Michael K. Whitehead
The Whitehead Law Firm, LLC
1100 Main Street, Suite 2600
Kansas City, Missouri 64105

/s/ *Jeremy Knee*
Jeremy Knee
Assistant Attorney General