UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| TRINITY LUTHERAN CHURCH OF COLUMBIA, INC. | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:13-cv-4022-NKL ) |
| CAROL S. COMER, in her official capacity as Director of the Missouri Department of Natural Resources Solid Waste Management Program | ) ) ) ) ) ) |
| Defendant. | ) |

**PLAINTIFF'S SUGGESTIONS IN SUPPORT OF MOTION FOR ATTORNEY'S FEES**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................1

ARGUMENT.........................................................................................................................2

    I.   The parties have stipulated that Trinity Lutheran is the prevailing party
        and thus entitled to reasonable attorney's fees and costs.......................................2

    II.  The requested attorney's fees are reasonable, especially in light of the novel
        and complex constitutional issues involved in this case........................................3

        A.    The requested rates are reasonable in any of the relevant markets.............4

        B.    The time spent successfully litigating the case all the way to the Supreme
            Court was reasonable ....................................................................................8

        C.    The requested fee is more than reasonable in light of other factors..........10

            1.    The case presented novel constitutional questions requiring
                highly skilled and experienced attorneys.............................................10

            2.    Counsel's efforts vindicated the constitutional rights of Trinity
                Lutheran and greatly served the public interest ..................................11

            3.    The case required a substantial amount of time and labor, precluded
                other employment, and had no guarantee of pay ................................12

        D.    Trinity Lutheran also is entitled to recover fees associated with
            preparing this motion ..................................................................................12

    III.  Trinity Lutheran's non-taxable costs also are recoverable ...........................................12

CONCLUSION....................................................................................................................13

CERTIFICATE OF SERVICE ............................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*A.J. ex rel. L.B. v. Kierst*,
    56 F.3d 849 (8th Cir. 1995) ...................................................................................................3

*Berry v. Volkswagen Group of American, Inc.*,
    397 S.W.3d 425 (Mo. 2013) ..................................................................................................7

*Blanchard v. Bergeron*,
    489 U.S. 87 (1989)................................................................................................................11

*Blum v. Stenson*,
    465 U.S. 886 (1984)........................................................................................................3, 4, 5

*Casey v. City of Cabool, Missouri*,
    12 F.3d 799 (8th Cir. 1993) ...................................................................................................5

*City of Riverside v. Rivera*,
    477 U.S. 561 (1986)..............................................................................................................11

*El-Tabech v. Clarke*,
    616 F.3d 834 (8th Cir. 2010) ...............................................................................................12

*Emery v. Hunt*,
    272 F.3d 1042 (8th Cir. 2001) ..............................................................................................4

*Farrar v. Hobby*,
    506 U.S. 103 (1992)...........................................................................................................2, 3

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)..............................................................................................................10

*Independent Federation of Flight Attendants v. Zipes*,
    491 U.S. 754 (1989)................................................................................................................2

*Lefemine v. Wideman*,
    568 U.S. 1 (2012)....................................................................................................................2

*Miller v. Dugan*,
    764 F.3d 826 (8th Cir. 2014) ..............................................................................................10

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ..............................................................................................8

*Oldham v. Ehrlich*,
    617 F.2d 163 (8th Cir. 1980) ................................................................................................3

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) ........................................................................................................3, 4

*Planned Parenthood Great Plains v. Williams*,
    863 F.3d 1008 (8th Cir. 2017) ............................................................................................2, 3

*Planned Parenthood, Sioux Falls Clinic v. Miller*,
    70 F.3d 517 (8th Cir. 1995) ....................................................................................................5

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015) ............................................................................................................5

*Republican Party of Minnesota v. White*,
    456 F.3d 912 (8th Cir. 2006) ..................................................................................................7

*SapaNajin v. Gunter*,
    857 F.2d 463 (8th Cir. 1988) ................................................................................................12

*Snider v. City of Cape Girardeau*,
    752 F.3d 1149 (8th Cir. 2014) ............................................................................................3, 7

*Snider v. Peters*,
    928 F. Supp. 2d 1113 (E.D. Mo. 2013) ..................................................................................5

*Trinity Lutheran Church, Inc. v. Pauley*,
    976 F. Supp. 2d 1137 (W.D. Mo. 2013) ................................................................................1

*Trinity Lutheran Church of Columbia, Inc. v. Pauley*,
    No. 2:13-cv-4022-NKL, 2014 WL 11516091 (W.D. Mo. 2014) ..........................................1

*Trinity Lutheran Church of Columbia, Inc. v. Pauley*,
    788 F.3d 779 (8th Cir. 2015) ..................................................................................................1

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    137 S. Ct. 2012 (2017) .......................................................................................................2, 11

*Trustees of the Construction Industry & Laborers Health & Welfare*
    *Trust v. Redland Insurance Co.*,
    460 F.3d 1253 (9th Cir. 2006) .........................................................................................12, 13

*Washington v. Denney*,
    No. 2:14-CV-06118-NKL, 2017 WL 4399566 (W.D. Mo. Oct. 3, 2017) ............................6

**Constitutional Provisions**

Mo. Const. Art. I § 7 ......................................................................................................................1

iv

**Statutes and Regulations**

42 U.S.C. § 1988 ............................................................................................................... *passim*

# INTRODUCTION

In 2012, Trinity Lutheran Church applied for a grant from Missouri's Scrap Tire Grant Program to help fund a safe rubber playground surface that would protect daycare and neighborhood children who use the church's playground. The application, which was evaluated under neutral criteria, scored very highly, ranking fifth out of forty-four submitted. But the Department of Natural Resources (DNR), the state agency responsible for administering the grant program, denied the application solely because Trinity Lutheran is a church. The DNR based its denial on Article I, § 7, of the Missouri Constitution, which states that "no money shall ever be taken from the public treasury, directly or indirectly, in aid of any church, sect or denomination of religion."

In January 2013, Alliance Defending Freedom (ADF) and The Whitehead Law Firm, LLC, filed a lawsuit on behalf of Trinity Lutheran, agreeing to represent the church *pro bono*. The complaint alleged that Trinity Lutheran's exclusion from the grant program solely because it is a church violated the U.S. Constitution. The State moved to dismiss the complaint for failure to state a claim, and this Court dismissed the complaint with prejudice on September 26, 2013. *See Trinity Lutheran Church, Inc. v. Pauley*, 976 F. Supp. 2d 1137 (W.D. Mo. 2013). Trinity Lutheran asked this Court to reconsider, but that request was denied on January 7, 2014. *See Trinity Lutheran Church of Columbia, Inc. v. Pauley*, No. 2:13-cv-4022-NKL, WL 11516091 (W.D. Mo. 2014). On February 4, 2014, Trinity Lutheran timely appealed to the U.S. Court of Appeals for the Eighth Circuit.

On appeal, the Eighth Circuit issued a divided panel opinion affirming the dismissal of the complaint. *See Trinity Lutheran Church of Columbia, Inc. v. Pauley*, 788 F.3d 779 (8th Cir. 2015). Trinity Lutheran filed a motion for rehearing *en banc*, but that request was denied by an equally

divided court—by a vote of 5 to 5—on August 11, 2015. The U.S. Supreme Court subsequently granted Trinity Lutheran's petition for writ of certiorari on January 15, 2016, and the parties argued the case before the Court in April 2017. On June 26, 2017, in a 7-2 decision, the Supreme Court held that the State's denial of Trinity Lutheran's grant application—solely because Trinity Lutheran is a church—violated the Free Exercise Clause of the First Amendment. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2025 (2017).

Having obtained this important result for itself and the public, Trinity Lutheran is entitled to attorney's fees and non-taxable costs under 42 U.S.C. § 1988 for its defense of First Amendment rights. Thus, Trinity Lutheran respectfully asks this Court to award it **$884,755.13**, which consists of $830,915.05 in total requested attorney's fees and $53,840.08 in non-taxable costs.

## ARGUMENT

**I.  The parties have stipulated that Trinity Lutheran is the prevailing party and thus entitled to reasonable attorney's fees and costs.**

Under 42 U.S.C. § 1988, the "prevailing party" in certain civil rights actions, including § 1983 lawsuits like this one, is entitled to recover "a reasonable attorney's fee." *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (quoting 42 U.S.C. § 1988). Thus, in the absence of "special circumstances," courts "*must* award fees to the prevailing plaintiff." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989).

Here, the parties have stipulated that Trinity Lutheran is the prevailing party and have agreed to submit only the "reasonableness and amount" of fees and costs to this Court. (Doc. No. 55.) The stipulation properly recognizes that Trinity Lutheran is a prevailing party because the church's lawsuit "materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefit[ed] the plaintiff.'" *Planned Parenthood Great Plains v. Williams*, 863 F.3d 1008, 1011 (8th Cir. 2017) (quoting *Farrar v. Hobby*, 506 U.S. 103,

2

111–12 (1992). Indeed, in direct response to the Supreme Court's ruling in this case, the State of Missouri promised to stop discriminating against churches in its Scrap Tire Grant Program. (Doc. No. 55 at ¶ 1.) It also has agreed to consider Trinity Lutheran's 2012 grant application during the current grant application cycle "on an equal basis" with other applications. (*Id.* at ¶ 2.) This was the precise relief Trinity Lutheran sought in filing its lawsuit.

That Trinity Lutheran received free legal representation makes no difference. Courts must award attorney's fees under fee-shifting statutes such as 42 U.S.C. § 1988 regardless of whether the prevailing party is represented by a legal service organization or counsel appearing pro bono. *See, e.g.*, *A.J. ex rel. L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995) (stating that it is inappropriate "for a court to decline fees because an attorney is employed by a legal aid organization"). The rule serves two important purposes: (1) it encourages attorneys to offer their services *pro bono*, thereby increasing access to the courts for individuals and organizations that could not otherwise afford a lawsuit; and (2) it deters misconduct by penalizing wrongdoers. So, "whether the focus is on enabling suit by those otherwise unable to afford litigation, or on deterring misconduct by imposing a monetary burden upon the wrongdoer, a legal aid organization merits an attorney's fee fully as much as does the private attorney." *Oldham v. Ehrlich*, 617 F.2d 163, 169 (8th Cir. 1980); *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984) (reasonable attorney's fees should be awarded "regardless of whether plaintiff is represented by private or nonprofit counsel").

**II.     The requested attorney's fees are reasonable, especially in light of the novel and complex constitutional issues involved in this case.**

In determining an attorney's fee award under § 1988, the "starting point" is the "lodestar," which is calculated by multiplying the number of hours reasonably expended by reasonable hourly rates. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014). The lodestar is "presumed to be the reasonable fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,

3

478 U.S. 546, 564 (1986) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). Here, Trinity Lutheran seeks $794,966.05 in attorney's fees for successfully litigating this case all the way to the U.S. Supreme Court.[1] That amount is based on the following hours and rates:

| Name | Experience | Hours | Hourly Rate | Total |
| --- | --- | --- | --- | --- |
| Christen Price | 5 years | 20.90 | $150 | $3,135 |
| Christiana Holcomb | 4 years | 70.60 | $200 | $14,120 |
| Cynthia Fisher (Legal Asst.) | | 2.75 | $100 | $275 |
| David Cortman | 22 years | 513.99 | $695 | $357,223.05 |
| Deb Hardin (Legal Asst.) | | 134.50 | $100 | $13,450 |
| Erik Stanley | 18 years | 385.80 | $495 | $190,971 |
| Joel Oster | 20 years | 97.90 | $450 | $44,055 |
| Jonathan Whitehead | 13 years | 87.80 | $300 | $26,340 |
| Jordan Lorence | 30+ years | 40.00 | $550 | $22,000 |
| Kevin Theriot | 24 years | 14.80 | $550 | $8,140 |
| Michael Whitehead | 40+ years | 77.10 | $370 | $28,527 |
| Rory Gray | 10 years | 247.80 | $350 | $86,730 |
| | | | | $794,966.05 |

A.  **The requested rates are reasonable in any of the relevant markets.**

A reasonable hourly rate is the prevailing market rate. *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). Reasonable fees under § 1988 are thus calculated "according to the prevailing

---

[1] As noted below, Trinity Lutheran seeks an additional $35,949 in attorney's fees for time spent preparing the stipulation for settlement and this fee motion. *See infra* p. 12.

4

market rates in the relevant community" for "similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984). In civil rights cases like this one, however, courts may "extend" the relevant market "beyond the local geographic community." *Snider v. Peters*, 928 F. Supp. 2d 1113, 1117 (E.D. Mo. 2013). And when, like here, the attorneys are "leaders in the field," courts may consider the prevailing rate in the market from which attorneys have traveled. *Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995). Otherwise, the protection of important civil rights would effectively be limited "to those communities where the rates are sufficient to attract experienced counsel." *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993).

In this case, Trinity Lutheran's attorneys are "leaders in the field" with decades of experience in First Amendment litigation. For example, Supreme Court advocate David Cortman has practiced constitutional law for over 21 years, focusing primarily on the areas of religious freedom, freedom of expression, and civil rights litigation. (Ex. 3 at 1–2 [Cortman Decl. ¶¶ 2, 3].) He has litigated over 200 cases in all levels of federal and state court. (Ex. 3 at 2 [Cortman Decl. ¶ 3].) He has served as lead or co-counsel in eleven Supreme Court cases, and has successfully argued two cases before the Supreme Court, securing a 7-2 decision in this case and a unanimous decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). (Ex. 3 at 3 [Cortman Decl. ¶ 9].) Co-counsel Erik Stanley likewise has practiced constitutional law for over 18 years and has litigated numerous First Amendment cases, including at the Supreme Court. (Ex. 4 at 2, 3–5 [Stanley Decl. ¶¶ 3, 10].) The other ADF attorneys and local counsel who assisted with the case and seek fees also are experienced litigators who focus their practice on constitutional litigation, including First Amendment matters. (*See* Exs. 5–11.) Jordan Lorence, for example, helped fine-tune the arguments and legal advocacy before the Supreme Court and has over 30 years of legal experience.

(Ex. 6 at 1–2 [Lorence Decl. ¶¶ 3, 4].) He has litigated hundreds of constitutional cases and has served as lead or associate counsel in six Supreme Court cases. (*Id.*)

Importantly, when Trinity Lutheran first considered challenging the denial of its grant application, it "knew of no other attorneys—either based in Columbia, MO, or in the nearby areas of Kansas City and St. Louis—who had experience handling First Amendment cases" and "who would be willing to represent the church for free, with absolutely no promise of future payment." (Ex. 14 at 3 [Glenn Decl. ¶ 6].) That resulted in Trinity Lutheran asking ADF to take its case. As explained by Philip Glenn, Trinity Lutheran's chairman of the board of trustees and chairman of the congregation at the time, the church learned that ADF had attorneys located in the Kansas City area and knew that ADF had extensive experience representing churches in constitutional litigation. (Ex. 14 at 2–3 [Glenn Decl. ¶ 5].) Had ADF not agreed to represent Trinity Lutheran *pro bono*, the church simply could not have afforded to file a lawsuit—let alone litigate the case all the way to the U.S. Supreme Court. (Ex. 14 at 3 [Glenn Decl. ¶ 7].)

While the case was pending before this Court and the Eighth Circuit, ADF attorneys Erik Stanley, Joel Oster, and Christina Holcomb were the attorneys primarily in charge. All three initially worked from the Kansas City-area, and request rates—ranging from $200 to $495—that are more than reasonable for the Missouri market.[2] *See, e.g.*, *Washington v. Denney*, No. 2:14-CV-06118-NKL, 2017 WL 4399566, at *3 (W.D. Mo. Oct. 3, 2017) (hourly rates ranging from $260 to $550 were "reasonable and fair" and "in line with market rates for comparable attorneys in Kansas City"). In fact, Charles Hatfield, a Missouri attorney who has practiced law for over 24 years, states that the hourly rates requested here "are consistent with the market rate for attorneys handling matters of similar complexity in the U.S. District Court for the Western District of

---

[2] Erik Stanley and Christiana Holcomb later moved to ADF's Phoenix-area office.

6

Missouri, Central Division, and for the Eighth Circuit Court of Appeals." (Ex. 16 at 1, 2 [Hatfield Decl. ¶¶ 1, 6].) Indeed, Mr. Hatfield explains that his standard billing rate "has been over $500 per hour" since early 2015, and that there are attorneys working from his firm's Kansas City office who have a standard billing rate in excess of $550 per hour. (Ex. 16 at 4 [Hatfield Decl. ¶ 11].)

Simply put, the requested rates of ADF attorneys who litigated the case before this Court and the Eighth Circuit are reasonable for the Missouri market. So too are the hourly rates of local counsel Michael Whitehead ($370) and Jonathan Whitehead ($300). *See, e.g.*, *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 429 n.2 (Mo. 2013) (hourly rate of $650 was reasonable); *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (higher hourly rates are warranted for attorneys with "expertise in First Amendment litigation"); *Republican Party of Minn. v. White*, 456 F.3d 912, 920–21 (8th Cir. 2006) (holding that hourly rate of $425 was reasonable in First Amendment case over ten years old and that attorneys' First Amendment expertise was "the controlling factor" in finding the rates reasonable).[3]

When the case reached the U.S. Supreme Court, ADF attorneys David Cortman, Erik Stanley, and Rory Gray took the lead. Their requested hourly rates—$695, $495, and $350, respectively—are well below market for Supreme Court advocacy.[4] Paul Clement, a remarkably accomplished and respected Supreme Court advocate, confirms that ADF's requested rates are

---

[3] When considering that ADF attorneys Christiana Holcomb and Joel Oster performed most of the work while the case was pending before this Court and the Eighth Circuit, the reasonableness of the requested rates is even more obvious. By relying primarily on attorneys with lower billing rates, the average hourly rate for all of ADF's work at the district court and court of appeals was $303 and $328, respectively. *See* Ex. 1 at 3–4 (average rate calculated by dividing total requested fee by total requested time). Moreover, much of Mr. Oster's time, including time spent briefing and arguing the case before the Eighth Circuit, is not being requested with this motion because Mr. Oster left ADF before recording that time in ADF's timekeeping system. This further highlights the reasonableness of the requested attorney's fees.

[4] Although Messrs. Cortman, Stanley, and Gray performed most of the Supreme Court work, other attorneys and staff in ADF's Phoenix and Washington, D.C., offices assisted with that work as needed. Their hourly rates range from $550 for an attorney with over 30 years of experience (Jordan Lorence) to $150 for an attorney with five years of experience (Christen Price). *See* Ex. 1 at 2.

7

"well within, and indeed below, the rates charged by many other constitutional-law practitioners with similar credentials." (Ex. 15 at 4 [Clement Decl. ¶ 11].) There are very few attorneys who would know better: Mr. Clement has argued over 90 cases before the U.S. Supreme Court, more than any other attorney since 2000. (Ex. 15 at 2 [Clement Decl. ¶ 3].)[5]

### B. The time spent successfully litigating the case all the way to the Supreme Court was reasonable.

Trinity Lutheran seeks $794,966.05 for 1,693.94 attorney and legal staff hours reasonably devoted to litigating this case before this Court, the Eighth Circuit, and the U.S. Supreme Court. The requested amount reflects a reduction of 245.91 hours, or about 12.5%, from the 1939.85 hours incurred litigating this matter. And it reflects a reduction of $105,667.45, or about 13%, in total fees. (*See* Ex. 1 at 2–4.)

"By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). This is especially so in cases where, like here, counsel represents plaintiff on a *pro bono* basis and will only recover fees if plaintiff prevails:

> [L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning.

*Id.*

---

[5] Messrs. Cortman and Gray worked from ADF's Atlanta office and request rates that are consistent with that market as well. In fact, Atlanta attorney Wayne Bond avers that Atlanta-area attorneys with similar experience can command hourly rates much higher than those sought here. He explains that his standard billing rate is $770 per hour and that other Atlanta attorneys charge as much as $895 per hour. (Ex. 17 at 5–6 [Bond Decl. ¶¶ 16 – 17].) Similarly, Atlanta attorney George Weaver, who has over 40 years of litigation experience and has argued before the U.S. Supreme Court, testifies that the hourly rates of Trinity Lutheran's attorneys are reasonable for the Atlanta market. (Ex. 18 at 2–3, 5 [Weaver Decl. ¶¶ 6–7, 12].)

8

As the attorney most involved with this litigation from start to finish, Erik Stanley reviewed the billing statements for every attorney and legal assistant who incurred time on this case. In his professional judgment, the hours for which compensation is requested were required to win this important First Amendment case on behalf of their client and society at large. (*See* Ex. 4 at 8–9 [Stanley Decl. ¶¶ 23–29].) Each attorney kept contemporaneous time records describing the time spent on litigation tasks and has exercised billing judgment in a good-faith effort to exclude excessive, redundant, or otherwise unnecessary hours. (*See* Exs. 3–13.) Furthermore, the time spent by attorneys who devoted less than 10 hours to this matter were excluded all together. (*See* Ex. 4 at 8–9 [Stanley Decl. ¶¶ 24–29].)

In addition, Messrs. Clement, Hatfield, Bond, and Weaver, who are each familiar with complex litigation, aver that the total hours spent by Trinity Lutheran's counsel successfully litigating this case was reasonable. (*See* Ex. 15 at 4 [Clement Decl. ¶ 12]; Ex. 16 at 4 [Hatfield Decl. ¶ 13]; Ex. 17 at 6 [Bond Decl. ¶ 18]; Ex. 18 at 6 [Weaver Decl. ¶ 14].) Mr. Clement's sworn testimony on this point deserves special attention, as his experience handling cases before the U.S. Supreme Court is unrivaled. (*See* Ex. 15 at 2 [Clement Decl. ¶ 3].) Explaining that "[n]ot all constitutional cases, and not all Supreme Court cases are created equal," Mr. Clement concludes that this case in particular "presented novel and complex issues of law" of "such surpassing importance" that it "attract[ed] widespread amicus interest," "demand[ed] extensive preparation," and required "sustained attention and time from attorneys with significant experience." (Ex. 15 at 2, 4–5 [Clement Decl. ¶¶ 6, 12].) In his expert opinion, the briefing of Trinity Lutheran's counsel "provided the sort of high-quality and comprehensive legal analysis that would be expected for high-stakes Supreme Court litigation involving the First Amendment." (Ex. 15 at 4 [Clement Decl. ¶ 9].) Thus, the requested fees are reasonable "[i]n light of the high-stakes and research-intensive

nature of this case." (Ex. 15 at 5 [Clement Decl. ¶ 12].)

### C. The requested fee is more than reasonable in light of other factors.

While the starting point for determining a reasonable fee is the lodestar, courts have discretion to increase the award for other considerations, "such as the nature of the results obtained." *Miller v. Dugan*, 764 F.3d 826, 830–31 (8th Cir. 2014). Courts may also increase the award based on one or more of the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 429–30 n.3 (1983). Although Trinity Lutheran does not request an upward adjustment from the lodestar amount, these factors weigh in favor of such an adjustment and demonstrate that the requested fee is more than reasonable.

#### 1. The case presented novel constitutional questions requiring highly skilled and experienced attorneys.

This case involved complex constitutional issues. The primary question was whether the Free Exercise Clause required the government to include religious organizations in otherwise neutrally available benefit programs. The question created a conflict within the United States Courts of Appeals and was one that the Supreme Court had never before answered in the affirmative. The serious constitutional issues raised by the case demanded skilled litigators with extensive experience in First Amendment law.

As noted above, Trinity Lutheran's primary attorneys have devoted their practice to First Amendment litigation and possess the skills and experience needed to successfully litigate

10

important constitutional cases like this one. Such expertise and skill was critical to convincing the Supreme Court to rule—for the first time ever—that the Free Exercise Clause does indeed prevent the exclusion of churches and religious organizations from otherwise neutral government benefit programs solely because they are religious.

### 2. Counsel's efforts vindicated the constitutional rights of Trinity Lutheran and greatly served the public interest.

In filing this lawsuit, Trinity Lutheran always had one aim: to establish the constitutional right of churches to participate in neutral, secular state grant programs under the same standards other grant applicants enjoyed. Trinity Lutheran achieved that goal when the Supreme Court overwhelmingly ruled that Trinity Lutheran's exclusion from Missouri's Scrap Tire Grant Program solely because it is a church was "odious to our Constitution." *Trinity Lutheran Church of Columbia, Inc.*, 137 S. Ct. at 2025. The favorable free exercise ruling negated the need for the Supreme Court to consider the remaining equal protection claim. *Id.* at 2024 n.5.

The decisive 7 to 2 ruling vindicated not only Trinity Lutheran's constitutional rights, but also the rights of churches and religious organizations across the country. As noted by the Supreme Court, the vindication of "important civil and constitutional rights" simply "cannot be valued solely in monetary terms." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). The "public as a whole has an interest in the vindication of rights conferred" by the Constitution "over and above the value of a civil rights remedy to a particular plaintiff." *Id.* (internal quotation and citation omitted).

In other words, this case serves as a quintessential example of why § 1988 exists: to encourage civil rights litigation that benefits the public. *See Blanchard v. Bergeron*, 489 U.S. 87, 87–88 (1989) (stating that § 1988 "was intended to encourage meritorious claims … because of the benefits of civil rights litigation for the named plaintiff and for society at large"). Compensating

11

Trinity Lutheran's counsel for this important constitutional victory fulfills congressional intent and ensures that such meritorious civil rights litigation continues. The requested attorney's fees are justified in light of the exceptional and unprecedented results achieved for Trinity Lutheran and the general public.

### 3. The case required a substantial amount of time and labor, precluded other employment, and had no guarantee of pay.

Many lawyers would not have taken this case. It required thousands of hours of work over several years, precluded taking on other clients, and had no guarantee of pay. Accepting a case under such circumstances further validates a full fee award. Indeed, as noted, Trinity Lutheran was aware of no other First Amendment attorneys who would have represented it *pro bono*, and the church simply did not have the resources to "pay an attorney for the time and effort needed to file such a lawsuit, nor would [it] have had the resources to appeal the case all the way to the Supreme Court." (Ex. 14 at 3 [Glenn Decl. ¶ 7].)

### D. Trinity Lutheran also is entitled to recover fees associated with preparing this motion.

Because the time spent preparing fee applications like this one generally is compensable, *see El-Tabech v. Clarke*, 616 F.3d 834, 843 (8th Cir. 2010), Trinity Lutheran also seeks an additional $35,949.00 for time spent on this fee petition, as well as for time spent entering into and preparing the parties' stipulation for settlement. That amount is based on an additional 83.10 hours of necessary legal work. (*See* Ex. 1 at 5; Ex. 2 at 91–95.)

## III. Trinity Lutheran's non-taxable costs also are recoverable.

The Eighth Circuit has "habitually" awarded the prevailing party the "[r]easonable expenses of litigation incurred by counsel." *SapaNajin v. Gunter*, 857 F.2d 463, 465 (8th Cir. 1988). Such awards, which are considered part of the fees due under § 1988, are "not for court costs proper," but rather "for reasonable expenses of representation." *Id.*; *see also Trs. of Constr.*

12

*Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006) ("It is well established that attorney's fees under 42 U.S.C. § 1988 include reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client."). Here, the non-taxable costs, such as postage, copying charges, travel costs, and the like, total $53,840.08. (*See* Ex. 12 at 8; Ex. 13 at 5; Ex. 19.)[6]

## CONCLUSION

This landmark First Amendment case has established important free exercise protections for Trinity Lutheran Church and other religious organizations, in addition to providing needed clarity to the lower courts. Having overwhelmingly prevailed in this case of first impression, Trinity Lutheran respectfully request that this motion be granted in its entirety, resulting in a total award of **$884,755.13** – the sum of $53,840.08 in non-taxable costs and $830,915.05 in attorney's fees.[7]

Respectfully submitted on this 12th day of July 2018.

s/ Erik W. Stanley
Erik W. Stanley*
Kansas Bar # 24326
estanley@adflegal.org
Kevin H. Theriot
Kansas Bar # 21565
ktheriot@adflegal.org
ALLIANCE DEFENDING FREEDOM
15100 N. 90th St.
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 facsimile

ATTORNEYS FOR PLAINTIFF

*Admitted Pro Hac Vice

---

[6] ADF's non-taxable costs total $51,548.53 and local counsel's non-taxable costs total $2,291.55.

[7] $794,966.05 for time spent successfully litigating this case to the U.S. Supreme Court plus $35,949.00 for time spent preparing this fee petition and the stipulation for settlement.

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed this 12th day of July 2018 using the Court's CM/ECF electronic filing system which will send notice to all counsel of record.

                                                    s/ Erik W. Stanley
                                                    Erik W. Stanley